**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OPUS FUND SERVICES (USA) LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-00923 |
| | ) | |
| | ) | |
| v. | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| | ) | Magistrate Judge Maria Valdez |
| THEOREM FUND SERVICES, LLC, STEPHEN | ) | |
| GIANNONE, MIKHAIL DAVIDYAN, MELISSA | ) | |
| BOCKWINKLE and ELIZABETH WRIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT**

Defendants Theorem Fund Services, LLC ("Theorem"), Stephen Giannone, Mikhail

Davidyan, Melissa Bockwinkel, and Elizabeth Wright ("Defendants"), by their attorneys, Michael

H. Moirano, Claire Gorman Kenny and Stephen A. Gorman of Moirano Gorman Kenny, LLC,

seek dismissal plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), or for a more definite statement

under Rule 12(e).

**INTRODUCTION**

Plaintiff Opus Fund Services (USA), LLC ("Opus") has brought a ten count Complaint

against four of its former employees, Stephen Giannone, Mikhail Davidyan, Melissa Bockwinkel,

and Elizabeth Wright, and against Theorem Fund Services, LLC ("Theorem") an  entity formed

by defendants Giannone and Davidyan, which now employs defendant Wright. [1] The Complaint

includes seven state common law claims and three additional claims brought under two federal

statutory claims, all based primarily on allegations that the individual defendants misappropriated

plaintiff's undefined "trade secrets" and "proprietary information."

All Counts of the Complaint fail to state claims and should be dismissed under Rule

12(b)(6). Alternatively, defendants are entitled to a more definite statement under Rule 12(e)

because the allegations of the Complaint fail to identify with any specificity the trade secrets or

other proprietary information allegedly misappropriated, are made against all defendants

collectively without identifying who did what, when and how, and are otherwise impermissibly

vague and improper. [2]

## ARGUMENT

### I. The Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State Claims.

Although a party need not plead "detailed factual allegations" to survive a motion to

dismiss, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167

---

[1] Defendant Bockwinkel is not now, and has never been, an employee of Theorem as plaintiff incorrectly alleges. (Cmpl. ¶13). Defendant Bockwinkel is also not, as plaintiff incorrectly alleges, a resident of the State of Illinois. More important, defendant Bockwinkel is not subject to personal jurisdiction in this Court, and separately moves for dismissal for lack of personal jurisdiction pursuant to FRCP12(b)(3).

[2] The plaintiff, a Delaware limited liability company, also failed to properly invoke the Court's diversity jurisdiction because it failed to identify all of its members and allege that they are diverse from all defendants. *See Wise v. Wachovia Securities, LLC,* 450 F.3d 265, 267 (7th Cir.2006) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members.") The Court's federal question jurisdiction is also suspect because plaintiff's federal claims appear to be immaterial, insubstantial and frivolous and made solely for purpose of obtaining jurisdiction. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015).

L.Ed.2d 929 (2007). Instead, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016). Plaintiff's claims fail to meet this test.[3]

### A.    Counts I, II, III and XI are Preempted by the Illinois Trade Secrets Act.

Plaintiff alleges state law claims in Count I for breach of fiduciary duty, in Counts II and III for tortious interference with prospective economic advantage, and in Count XI for conversion. Each of these claims is premised upon a central allegation of trade secret misappropriation. (Cmplt. ¶¶ 52, 59, 65, 98).

Plaintiff's common law claims are preempted under the Illinois Trade Secrets Act, 765 ILCS 1065 ("ITSA"). The ITSA expressly provides that it "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a). ITSA also "abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself." *Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 919 (N.D. Ill. 2014); citing *Hecny Transp., Inc. v. Chu,* 430 F.3d 402, 404 (7th Cir.2005). Moreover, "ITSA preempts all conflicting non-contract causes of action based on the misappropriation of confidential information, even if that information does not satisfy the ITSA's definition of a trade secret." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 801–02 (N.D. Ill. 2016); citing *Spitz v. Proven Winners N.A., LLC*, 759 F.3d 724, 733 (7th Cir.2014).

---

[3] Due to a numbering error, there is no Count V alleged in the Complaint.

2

"Trade secrets" are broadly defined in the ITSA and include any confidential or proprietary information plaintiff alleges was misappropriated. Under the ITSA, "trade secrets" include: "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

Because the claims in Counts I, II, III and XI are based primarily if not exclusively on the defendants' alleged misappropriation of trade secrets, which are preempted by the ITSA, these Counts fail to state claims and should be dismissed.[4]

**B.      Count VI and VII Fail to State Claims under the Defense of Trade Secrets Act.**

Counts VI and VII of the Complaint purport to state claims under the Defense of Trade Secrets Act (18 U.S.C. 1836) against the four individual defendants, and against Theorem, respectively. DTSA is a criminal statute that imposes civil liability where a "trade secret" is "misappropriated," as these terms are defined in the statute. Plaintiff cites no section or subsection of DTSA in either Count purporting to allege claims under this statute. It does not allege what information constitutes a "trade secret" under DTSA, nor facts establishing that any alleged "trade

---

[4] To the extent that Count I and Count XI each include an additional allegation against defendant Giannone individually based on his alleged solicitation of Opus employees (Cmplt. ¶53) and alleged conversion of funds (*Id.*¶ 104), these improperly pled claims violate Fed. R. Civ. P. 10(b), and are subject to 12(b)(6) dismissal as addressed in Section III below. Also, Count XI, plaintiff's claim for conversion, should be dismissed because it fails to allege a pre-lawsuit demand as required for a conversion claim. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016) ("a pre-lawsuit demand is necessary to sustain a conversion claim.")

secret" satisfies the definition of "trade secrets" provided in that statute. (18 U.S.C. 1839). Plaintiff also does not allege how any "trade secret" was "misappropriated" as that term is defined in DTSA, or *when* any act of "misappropriation" occurred. *Id*. These facts are essential to a claim under this relatively new criminal statute.

Also, the Act became effective May 11, 2016. *See* PL 114-153, May 11, 2016, 130 Stat 376. The statute does not provide that it applies retroactively to conduct which occurred prior to its enactment. "Because retroactive application inherently raises issues of fairness, courts have long applied a presumption against statutory retroactivity." *Jeudy v. Holder*, 768 F.3d 595, 599 (7th Cir. 2014). No alleged act of trade secret misappropriation is alleged to have taken place on or after the effective date of the statute.[5] None of the alleged acts of misappropriation is subject to nor violates the DTSA. Because plaintiff's vague allegations fail to state a claim for civil liability under DTSA, the claim should be dismissed.

**C.      Count VIII Fails to State a Claim under the Computer Fraud Abuse Act.**

Count VIII purports to state a claim against the four individual defendants for violations of the Computer Fraud Abuse Act, 18 U.S.C. 30 ("CFAA"). The CFAA is "primarily a criminal statute." *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009). Civil liability is permitted for proscribed conduct in Section 1030(a), which itself has seven subsections (four of which contain two or three additional subsections).

---

[5] Although defendant Wright is alleged to have resigned on May 23, 2016 (Compliant ¶39), and is alleged to have misappropriated trade secrets prior to her resignation (*Id.*, ¶40), the Complaint does not allege *when* this misappropriation took place, let alone that it occurred during the three-week window of time between the enactment of the DTSA and Wright's resignation.  Moreover, Count VII against Theorem does not contain any allegation as to when any alleged statutory violation occurred.

While plaintiff summarily alleges defendants' conduct violates the CFAA, plaintiff does not allege which of the seven subsections within Section 1030 applies, or what conduct was undertaken by any defendant which violates any provision of this robust and detailed statute. Rather, plaintiff merely alleges the individual defendants "each accessed the network of Opus for the express of purpose of absconding with" otherwise unidentified "confidential, proprietary and trade secret information of Opus," and that "after Mr. Giannone resigned from Opus, without authorization, he accessed or attempted to access Opus' iSymphony platform on more than one occasion" (Cmplt. ¶¶85-86). These allegations do not sufficiently allege what provision of the CFAA was violated, how, by whom, or when.

Failing to identify exactly which provisions of the CFAA plaintiff is invoking is greatly important, as different pleading requirements are required depending on the basis of the statutory violation alleged. See e.g. *Motorola*, 609 F. Supp. 2d at 765 (recognizing that Fed. R. Civ. P. 9(b) does not apply section (a)(2), (a)(4) and (a)(5), but "quite plainly applies to section 1030(a)(4).") Without knowing upon what provision plaintiff's CFAA claim is based, it is impossible to know what pleading standard applies.

Equally important, plaintiff has wholly failed to allege "damages" as required under the CFAA. Courts have recognized that to properly allege damages for purposes of the CFAA, the Complaint must allege facts establishing the "destruction or impairment of data." *Pascal Pour Elle, Ltd. v. Jin*, 75 F. Supp. 3d 782, 791 (N.D. Ill. 2014). Here, plaintiff merely alleges that "These Defendants' unauthorized access proximately caused Opus damages because its network security was compromised and Opus was forced to engage in remediation efforts in excess of $5,000.00." (Cmplt. ¶88). Plaintiff's vague allegation it suffered damages resulting from a "security

5

compromise" "(whatever that means) and was required to undertake unspecified "remediation efforts," do not satisfy this standard.

Plaintiff summarily and insufficiently alleges that defendants' conduct (as generically pled) violated the CFAA, a criminal anti-hacking statute, without alleging which provisions were violated, when, by whom, or how, nor any facts establishing that plaintiff has been "damaged" as required under the CFAA. The allegations are insufficient to state a claim under the CFAA. Count VIII should be dismissed.

### D.    Count IV Fails to State a Claim for Tortious Interference.

Count IV purports to state a claim against defendant Giannone for tortious interference with business relations. The elements of a claim for tortious interference with prospective economic advantage are: "(1) the existence of a valid business relationship or expectancy; (2) the defendants' knowledge of plaintiff's relationship or expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship or [results in] termination of the relationship; and (4) damages to plaintiff resulting from such interference." *Dowd & Dowd, Ltd. v. Gleason,* 352 Ill.App.3d 365, 287 Ill. Dec. 787, 816 N.E.2d 754, 767 (1st Dist.2004).

The crux of Count IV is that Opus had "valid, preexisting employment relationships" with its employees, and that Giannone "poached" these employees. (Cmplt. ¶¶ 69, 71). As to one of these allegedly "poached" employees, Jorge Hendrickson, plaintiff specifically alleges he remained at Opus. (Cmplt. ¶26). There is no claim for tortious interference with a business relationship never terminated. As to the remaining individuals allegedly "solicited" by Giannone, there are *no* allegations whatsoever as to when Giannone "solicited" each of these individuals,

how this "solicitation" was effectuated, or any facts that would establish that Giannone's conduct was the proximate cause of any individual's decision to resign from employment with Opus.

Plaintiff cannot merely allege the elements of a claim for tortious interference with no supporting facts. The Seventh Circuit has recognized that "legal conclusions or elements of the cause of action . . . may be disregarded on a motion to dismiss." *See McCauley v. City of Chi.*, 671 F.3d 611, 671 (7th Cir. 2010) (citation omitted). Absent factual allegations when and *how* any individual Opus employee was "solicited" by Giannone, and how this solicitation resulted in any individual's resignation from Opus, plaintiff has failed to allege a cause of action for interference under Illinois law.

Also, plaintiff does not properly allege "damages" as required to state a tortious interference claim. Rather, plaintiff alleges its "damages" to be the "disruption" of its relationships (Cmplt. ¶60). While this allegation may satisfy the third element of a tortious interference claim (i.e., that the relationship was terminated), it does not additionally satisfy the fourth, distinct element of "damages." *Aon Risk Servs., Inc. of Illinois v. Shetzer*, 2002 WL 1989466, at \*5 (N.D. Ill. Aug. 27, 2002) ("failure to show damages tied to claimed interference dooms claim for tortious interference with business relations").[6] Because plaintiff has failed to allege facts necessary to support its claim for tortious interference, Count IV should be dismissed.

### E.    Count IX Fails to State a Claim for Defamation.

Count IX purports to state a claim for defamation against defendant Giannone. Under Illinois law, the elements of a defamation claim for both *per quod* and *per se* actions are "that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v.*

---

[6] A copy of this Opinion is attached hereto as Exhibit A.

*Rogers*, 234 Ill.2d 478, 491, 334 Ill. Dec. 624, 917 N.E.2d 450, 459 (2009). Nowhere does plaintiff allege that Giannone made any "false" statement whatsoever. Absent this essential element required for a defamation claim, Count IX cannot stand.

### F.      Count X Fails to State a Claim for Breach of Contract.

In Count X, Plaintiff purports to allege that defendants Davidyan, Bockwinkel and Wright "were subject to" Confidentiality Agreements with Opus. (Cmplt. ¶96). No such "Confidentiality Agreement" is attached to the Complaint, nor is the specific language of any such agreement upon which plaintiff purports to rely quoted or otherwise set forth by plaintiff. Rather, plaintiff alleges these alleged agreements "require[ed] these Defendants to keep the customers, contacts, and contracts, among other things, confidential during the employment term and thereafter and not disclose same to any third party." *Id.* While this allegation is vague, it alleges the existence of an indefinite confidentiality agreement, unrestricted in chronological or geographic scope. Any such agreement is unenforceable under Illinois law.

It is well established under Illinois law, that a "confidentiality agreement can be enforced only if, as in the case of a non-competition agreement: (1) the chronological and geographical limitations are reasonable; (2) the information sought to be protected is, in fact, confidential; and (3) the restriction is reasonably necessary for the protection of a legitimate proprietary interest. *Disher v. Fulgoni*, 124 Ill. App. 3d 257, 262, 464 N.E.2d 639, 643 (1st Dist. 1984). Based on plaintiff's allegation, the Confidentiality Agreements are unlimited chronologically and geographically and are therefore unenforceable. Count X should be dismissed.

## II.      If the Complaint is not Dismissed, Plaintiff Should Provide a More Definite Statement of Its Claims Under Rule 12(e).

If the Court finds that each of the Counts withstands dismissal under Rule 12(b)(6), plaintiff should be required to provide a more definite statement of its claims under Rule 12(e) because the

allegations of the Complaint are "so vague or ambiguous that [defendants] cannot reasonably prepare a response." Also, to the extent Counts I and XI purport to allege claims against defendant Giannone distinct from the claims alleged against all individual defendants named in those Counts, these Counts violate Rule 10(b) and the claims made in those Counts that are specific to Giannone must be separately pled. Courts have recognized that "violation of this rule may be remedied by a motion under Rule 12(e) for a more definite statement." *Hackman v. Dickerson Realtors, Inc.,* 520 F. Supp. 2d 954, 976 (N.D. Ill. 2007); citing *Fields v. Vill. of Skokie,* 502 F. Supp. 456, 459–60 (N.D.Ill.1980).

### A. Defendants are Entitled to a More Definite Statement as to all Counts of the Complaint.

Fed. R. Civ. P. 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." In Counts I, II, III, VI, VII, VIII, X, and XI defendants are alleged to have misappropriated and used undefined and generically described trade secrets or other confidential or proprietary information.

Counts I, VI, VIII, and XI are alleged against each of the four individual defendants, and Count II and X are alleged against three of the four individual defendants. Each of the individual defendants has the right to know what, specifically, he or she has alleged to have done, when, and how. None should be required to respond to allegations lodged against three other separate individuals, whose conduct they can neither admit nor deny.

Also, plaintiff fail to allege *what* exactly was misappropriated by each of the individual defendants, other than the vague allegations that defendants all misappropriated "confidential proprietary information and trade secrets including business/client referral sources, business prospects, future business development plans, and proprietary client information, as well as

proprietary manuals and contracts of Opus." (Cmplt. ¶23).[7] Plaintiffs also fail to allege *what* specific sources, prospects, plans, information, manuals or contracts were taken - facts which plaintiff presumably obtained and verified during its pre-filing investigation of the very serious claims it has alleged in this case. There is also no allegation as to the form in which any of this information existed (documents, electronic files, etc.) how it was retrieved (downloaded, printed, copied, etc.) by what means it was removed by defendants (physically, through digital transfer, etc.), or from where (electronic files or databases, a physical structure, etc.). Without alleging with some detail precisely what was taken, when, by whom and how, defendants cannot competently answer plaintiff's allegations. To be sure, all defendants vehemently deny taking any trade secret or proprietary information belonging to the plaintiff. Requiring plaintiff to state precisely what was taken, when, by whom and how, is only fair.

Similarly, the Counts stated against Theorem, Count III and Count VII, allege Theorem's tortious interference with business expectancy, and violation of the Defense of Trade Secrets Act, respectively. Count III makes the single vague allegation that Theorem "target[ed] the same clients historically serviced by Opus by using Opus' protected trade secrets and other confidential and proprietary information." (Cmplt. ¶63). Count VIII makes a single vague allegation that "Theorem's misappropriation of Opus' trade secrets proximately caused Opus damages" (*Id*., ¶82). There is no allegation indicating what Theorem allegedly misappropriated, when or how. Theorem needs and is entitled to more detail to adequately respond to these claims.

      **B.**       **Claims Alleged Against Defendant Giannone in Counts I And XI Violate Fed. R. Civ. P. 10(b).**

---

[7] The failure to allege what was misappropriated by whom is also a defect in plaintiff's claim for conversion in Count XI. Plaintiffs should also be required to provide a more definite statement about that claim.

Count I (breach of fiduciary duty) and Count XI (conversion) purport to state claims against each of the individual defendants arising out of the alleged misappropriation of trade secrets and other confidential information. As set forth above, these claims are preempted under ITSA. However, both Count I and Count XI each singularly allege of conduct undertaken by defendant Giannone, individually, which is unrelated to his alleged trade secret misappropriation. In Count I, Giannone is alleged to have solicited Opus employees in violation of his fiduciary duty (Cmpl. ¶ 53), and in Count XI he is alleged to have "converted" funds of Opus in connection with business trip he took during his employment. (*Id.*, ¶¶101-102). Setting aside the truth of these allegations (which Giannone denies) and whether a properly pled claim based on either contention would be valid (it would not), these allegations are improperly included in Counts alleged against all four individual defendants based on similar occurrence – the misappropriation of plaintiff's alleged trade secrets.

Fed. R. Civ. P. 10(b) provides:

> If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

The allegations against Giannone in Counts I and XI, based on his alleged solicitation of plaintiff's employees and conversion of funds, purport to state distinct claims against Giannone founded on "separate transactions and occurrences" that are not alleged against the other individual defendants named in these same Counts. For clarity, and in fairness to each defendant, these unique claims against Giannone should be pled in separate and distinct counts as required under Rule 10(b).

## CONCLUSION

WHEREFORE, defendants respectfully request the Court to dismiss plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), or require a more definite statement under Fed. R. Civ. P. 12(e).

11

Respectfully submitted,

**THEOREM FUND SERVICES, LLC, STEPHEN GIANNONE, MIKHAIL DAVIDYAN, MELISSA BOCKWINKLE and ELIZABETH WRIGHT**,


By:     */s/*  Claire Gorman Kenny
        One of their attorneys

        Michael H. Moirano
        Claire Gorman Kenny
        Stephen A. Gorman
        **MOIRANO GORMAN KENNY, LLC**
        135 S. LaSalle Street, Suite 3025
        Chicago, IL 60603
        (312)614-1260
        mmoirano@mgklaw.com
        cgkenny@mgklaw.com
        sgorman@mgklaw.com

12