IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OPUS FUND SERVICES (USA) LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 17 C 923 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| THEOREM FUND SERVICES, LLC, STEPHEN GIANNONE, MIKHAIL DAVIDYAN, MELISSA BOCKWINKEL, and ELIZABETH WRIGHT, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Opus Fund Services (USA) LLC ("Opus") filed a Second Amended Complaint against Theorem Fund Services LLC ("Theorem") and individual defendants Stephen Giannone, Mikhail Davidyan, Melissa Bockwinkel, and Elizabeth Wright, following this Court granted in part defendants' previous motions to dismiss. Defendants now move to dismiss Counts II, III, and IV, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [51]. For the reasons set forth below, this Court grants the motion.

**Background**

The following facts are summarized from the Second Amended Complaint. Opus is a full-service, domestic, and international fund administrator with offices in New York, Chicago, San Francisco, and Bermuda. Opus is a Delaware Limited Liability Company ("LLC") with its principal place of business in Bermuda. Theorem is an Illinois LLC with its principal place of business in Chicago. Stephen Giannone was a senior executive at Opus until he resigned on September 30, 2015. After resigning from Opus, Giannone founded Theorem, a competing company. Mikhail Davidyan is a former Senior Vice President at Opus. Elizabeth Wright is a former Senior Vice

1

President at Opus.

Melissa Bockwinkel is a former Senior Vice President at Opus and was an executive at Opus in its Illinois office before moving to Oregon in 2013, where she continued to work remotely for Opus through its Illinois office until October 2015.

The Second Amended Complaint alleges that former Opus president, Stephen Giannone, resigned his position and went to work for and then founded a competitor, Theorem Fund Services. Opus further alleges that Giannone solicited other high-level Opus employees, Davidyan, Wright, and Bockwinkel, to join him at Theorem. According to Opus, each defendant had access to Opus' trade secrets and, before resigning, without authorization improperly acquired Opus trade secrets through the iSymphony platform, email systems, and network drives for use with a competitor. Opus alleges that it maintains confidentiality of its information by using password protected restricted networks and confidentiality agreements with its employees. Opus claims business/client referral sources, business prospects, future business development plans, proprietary manuals and contracts are all trade secrets.

Opus filed the Second Amended Complaint on October 20, 2017, alleging violations of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065 *et seq.* (Count II), the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* (Count III), and the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 *et seq.* (Count IV), among other Illinois common law claims. (Dkt. 49). Defendant Giannone filed an Answer on Counts I, V, VI, VII, and VIII, but joins the other defendants in the motion to dismiss Counts II, III, and IV.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint

and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive dismissal, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include enough details about the subject-matter of the case to present a story that holds together. But the proper question to ask is still *could* these things have happened, not *did* they happen." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014) (emphasis in original) (internal citations omitted).

**Discussion**

Defendants move to dismiss Counts II, III, and IV for improper "group pleading" rendering the claims facially implausible. They also argue that Counts II and III fail to state sufficient facts to satisfy the statutory definition of "trade secret" under ITSA and DTSA. Lastly, defendants assert that the Second Amended Complaint contains no allegations to show damage within the meaning of CFAA. This Court will address argument in turn.

*1. Facial Plausibility under Iqbal and Group Pleading*

Defendants argue that the Second Amended Complaint improperly pleads the allegations against the individual defendants, collectively. In Count II, for example, it states: "Prior to resigning from Opus, Giannone, Davidyan, Wright, and Bockwinkel, all without authorization, accessed the iSymphony platform, email systems and network drives and improperly acquired Opus' trade secrets to benefit their subsequent employers Perrenial and/or Theorem, direct competitors." Dkt. 49 at ¶ 60. The complaint also sets forth these same allegations, identically, as to each defendant. *See* Dkt. 49 at ¶¶ 22, 27, 30, and 39. Relying on *Chamberlain Group Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 C 06113, 2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) (Tharp, J.), defendants argue that the complaint

3

engages in impermissible group pleading.

Ordinary pleading under Rule 8 requires pleading a facially plausible claim. "Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (finding that allegations that "the defendants looted the corporation" was insufficient because "[a]n allegation that *someone* looted a corporation does not propound a plausible contention that *a particular person* did anything wrong."). In *Chamberlain*, the district court dismissed the complaint because it did not distinguish between the defendants, referring interchangeably to "the defendants" and "TTI." *Chamberlain*, 2017 WL 4259005, at *3. There, as here, the plaintiff argued that it intended to plead that all seven corporate identities committed every action attributed to the corporate defendant TTI. *Id.* With regard to the allegation that the individual defendant Scott provided information to TTI about his trip, the court stated, "Surely Chamberlain does not mean that Scott sent the information to seven different entities." *Id.* Without information about the corporate relationship, if any, between the defendants, the court found the allegations did not support an inference of a corporate relationship. *Id.*

Similarly, here, Opus alleges that all the individual defendants improperly acquired trade secrets from Opus and absconded with it. It is unclear whether Opus is alleging that each defendant acquired the same information and absconded with it in the same fashion. Such allegations would be even more implausible than in *Chamberlain*. At least in that case there was a possibility, not present here, of a corporate relationship between the defendants that could unify their actions. Moreover, as the court in *Chamberlain* noted, "[t]here is nothing inherently wrong with this theory [that the TTI defendants were all in on the scheme to develop a competing product], but the claim lacks sufficient facts to make it plausible. It is not enough to allege conspiracy, or concerted action, without differentiating between the participants." *Id.* The pleading here is deficient for the same reason.

4

Putting aside the inherent inconsistency in Opus pleading that each defendant has access to Opus trade secrets (Dkt. 49 at ¶ 59), and then pleading that each accessed the Opus networks without authorization while still employed at Opus (*Id.* at ¶ 60), it should be within Opus' knowledge who did what while still at Opus. Indeed, Opus provides greater specificity in its allegations against Giannone. Although Opus need not plead with particularity, liability is personal and must put each defendant on notice of their actions. The complaint in its current form fails to provide such notice and, instead, is the kind of bare conclusions that fail the standard under *Iqbal*.

*2. Statutory Definition of Trade Secrets*

Defendants argue that Counts II and VI under ITSA and DTSA fail to adequately plead misappropriation of trade secrets. The definition of trade secrets under both ITSA and DTSA requires that the plaintiff take reasonable efforts to secure and maintain the secrecy of the information. *See* 765 Ill. Comp. Stat. Ann. 1065/2(d)(2); 18 U.S.C. § 1839(3)(B). The Second Amended Complaint alleges that:

> Opus has engaged in reasonable efforts to maintain the confidentiality of the subject information. In addition to storing this information on a password protected and restricted network, Opus has also sought to protect its confidential nature by limiting its employees' use of the information through Confidentially Agreements prohibiting the disclosure of such information to third parties.

Dkt. 49 at ¶¶ 57, 77. Defendants assert that the security practices Opus employs in addition to confidentiality agreements are normal business practices insufficient to meet the statutory definition of trade secrets. This Court agrees.

"While 'an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret,' such an agreement, without more, is not enough." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011) (Norgle, J.). Opus argues that it has met this standard. However, "an employer must use additional measures to protect the confidentiality of information he considers to be a trade secret." *Centrifugal Acquisition Corp. v.*

5

*Moon*, 849 F. Supp. 2d 814, 831 (E.D. Wis. 2012) (citing *Maxpower Corp. v. Abraham,* 557 F.Supp.2d 955, 961 (W.D. Wis.2008)).

Here, Opus does nothing to differentiate its protective measures for the alleged proprietary trade secrets from those imposed on any other corporate information. Opus relies on *Covenant Aviation Sec. LLC v. Berry*, 15 F.Supp.3d 813, 818 (N.D. Ill. 2014) (Lefkow, J.), to support its position. In that case there were allegations that the plaintiff "treats this information as highly confidential" in addition to having confidentiality agreements. There is no similar allegation here that the information is treated as highly confidential or any more confidential than all of Opus' internal information.

Next, defendants argue that the allegations in the Second Amended Complaint fail to allege that "misappropriation" occurred. According to the defendants the allegations in the complaint are too conclusory to survive dismissal. The only allegations of "misappropriation" are that the defendants "accessed" and "improperly acquired" Opus' trade secrets. Dkt. 49 at ¶ 60.

Misappropriation is defined in the statute as:

(1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) disclosure or use of a trade secret of a person without express or implied consent by another person who:
    (A) used improper means to acquire knowledge of the trade secret; or
    (B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:
        (I) derived from or through a person who utilized improper means to acquire it;
        (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
        (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or ....
(C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

765 ILCS 1065/2(b). The statute also defines "improper means" as including "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to

maintain secrecy or limit use, or espionage through electronic or other means. Reverse engineering or independent development shall not be considered improper means." *Id.* 1065/2(a). Opus' allegation that defendants "improperly acquired" trade secrets merely echoes the statutory language without any factual assertion of why it was improper. Further factual enhancement of "improper" is necessary where Opus alleges defendants had access to trade secrets because of their position in the company and accessed the information while still employed at Opus.

Opus counters that under the "inevitable disclosure doctrine" the allegations are sufficient based on the movement of the defendants from Opus to its competitor, Theorem. "To invoke this doctrine the complaint must do more than make conclusory allegations that the employees will necessarily use trade secrets in their new position." *Covenant Aviation Sec., LLC*, 15 F. Supp. 3d at 819. Under this doctrine, the court can infer a defendant's use of trade secrets "based on a defendant's prior positions with plaintiff, the information to which they had access and the nature of their work for their new employer." *Id.* (internal quotation omitted).

Opus does not allege any factual support from which this Court could infer their use of trade secrets. By contrast, in *Covenant Aviation Sec.*, the complaint alleged the defendant Berry, as the plaintiff's president had access to confidential and proprietary information and, after he became affiliated with the plaintiff's competitor that company began offering expertise in the same services. *Id.* Further, the complaint in that case alleged that the defendant communicated directly with one or more other competitors of Covenant ... and has provided, or offered to provide, confidential and proprietary information that would be useful in competing for the forthcoming rebid of the [proprietary service] contract for San Francisco and for various security services at other airports." *Id.* The allegations in Opus' Second Amended Complaint fall short of the kind of factual allegations to support an inevitable disclosure inference here. Thus, this Court finds that Opus' allegations of misappropriation are too conclusory.

*3. Damages under CFAA*

Defendants argue that Count IV fails to allege a violation of Section (a)(5)(B) of CFAA because there are no allegations of damages. Opus asserts that it need only allege loss *or* damage, and it has alleged loss within the CFAA statutory definition. Opus' reasoning is mistaken. Although section 1030(g) of the CFAA, establishing the cause of action, states damage or loss in the alternative, whether damage or loss or both must be alleged depends on the violation the plaintiff is claiming. *See* 18 U.S.C. § 1030(g). As the district court in *Motorola Inc. v. Lemko Corp.*, explained a plaintiff alleging violations of subsections (a)(2) and (a)(4) need only allege damage or loss, not both; however, a plaintiff must allege damage in order to state a violation of subsection (a)(5). 609 F. Supp. 2d 760 (N.D. Ill. 2009) (Kennelly, J.).

Here Opus is claiming a violation of section 1030(a)(5)(B), which allows a plaintiff to recover from "whomever: (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage[.]" Thus, "damage" is an essential element of the violation alleged here. The CFAA defines damage as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). While the Second Amended Complaint contains sufficient allegations of loss as defined by the CFAA, it fails to allege damage. Accordingly, this Court finds that Opus fails to state a claim in Count IV.

**Conclusion**

Based on the foregoing discussion, this Court grants defendants' Motion to Dismiss [51] Counts II, III, and IV, of the Second Amended Complaint without prejudice. Plaintiff is allowed 14 days from entry of this Order to file an Amended Complaint complying with this opinion.

IT IS SO ORDERED.

ENTERED:

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATE: 3/5/2018